# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

**VICTOR BODDIE,**

    **Plaintiff,**

v.                                 **CASE NO: _____**
                                     **JURY DEMANDED**

**THE CHEMOURS COMPANY,**
**a/k/a THE CHEMOURS COMPANY FC, LLC,**
**A Delaware Corporation,**

    **Defendant.**

---

## COMPLAINT

---

Comes now Victor Boddie, Plaintiff by and through his attorney, Kathleen L. Caldwell, and hereby submits his Complaint and states:

This is an action against The Chemours Company, a/k/a The Chemours Company, FC, LLC, for discrimination on account of race and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and on account of age pursuant to the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §12117.

Plaintiff brings this action against The Chemours Company, for discrimination based on his race, black, and age, and alleges that he has been subjected to unequal treatment, benefits, privileges, and rights in the terms and conditions of employment, and the contractual relationship between Plaintiff and his employer, pursuant to 42 U.S.C. §1981, as enacted in the Civil Rights Act of 1991;

1

this cause of action arises under an Act of Congress enacted after December 1, 1990.

## I. PARTIES JURISDICTION AND VENUE

1. Plaintiff, Victor Boddie, (African-American), is an adult resident citizen of the State of Tennessee, residing at 6560 Whitetail Lane, Memphis, TN 38115.

2. Defendant, The Chemours Company, is a Delaware corporation, which owns and operates a chemical plant located at 2571 Fite Road, Memphis, TN 38127. It may be reached with service of process by serving CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

3. Jurisdiction is founded upon federal question, pursuant to the provisions of Title VII, 42 U.S.C. §2000e-5(f)(3) and 42 U.S.C. §1981(6); pursuant to 28 U.S.C. §§1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c).

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff filed a Charge of Discrimination (No. 490-2019-01305) with the Equal Employment Opportunity Commission on April 9, 2019.  A true and correct copy of said Charge is attached hereto as Exhibit "A."  Said Charge was timely filed, within 300 days of the events complained of under Title VII.  Said Charge contains an error, through no fault of the Plaintiff.  Under "The Particulars" it clearly reads in relevant part:  "I have been discriminated against because of my age (60), race (black) and in retaliation…  The Charge shows boxes checked as follows:  RACE and RETALIATION.  AGE is not checked.  This error does not prohibit Plaintiff from

pursuing his age claim. The Charge clearly alleges discrimination based on race, age, and retaliation.

6. Two days later, on April 11, 2019, the Equal Employment Opportunity Commission issued its Dismissal and Notice of Rights. A true and correct copy of said Right to Sue is attached hereto as Exhibit "B." Plaintiff received said Notice on or about April 13, 2019.

7. The instant case is filed timely by Plaintiff, within 90 days of Plaintiff's receipt of said Right to Sue.

### III. FACTS

8. Plaintiff was initially hired in 1979 by Defendant's predecessor, E. I. DuPont de Nemours, as an Operator. He was laid off for about six months. Upon return to work, he then was assigned a hire date in February of 1980. By February 2019, he had been employed by said employer for 39 years.

9. Plaintiff has thus been employed by Defendant (hereinafter "Chemours") for over thirty-nine (39) years. All references to "Chemours" refers to the named Defendant and/or its predecessor, E. I. DuPont de Nemours.

10. After serving as a Line Mechanic in Oxone, in 2007 Plaintiff was re-assigned to the Powerhouse as an A Mechanic, where he performed maintenance on boilers and steam turbines.

11. Plaintiff during his 39 years of employment has been an excellent employee. He has not received any discipline until an issue arose in 2018, as described below.

12. By early 2018, Plaintiff became aware that Chemours was firing or actively discouraging black and/or older mechanics. At the same time, Chemours was hiring white and much younger mechanics, including but not limited to: Chris Bryan, Brian Whitesides, Steve Turnage, and Jared Ninas. Said employees had little or no industrial or relevant work experience. They were not initially placed into a specific production area.

13. The Memphis plant by 2007 had two production areas, Hydrogen (or liquid) Cyanide and Sodium (dry) Cyanide. Additionally it had an area known as the Powerhouse. All these areas had A Mechanics assigned to them.

14. In July 2018, or thereabouts Plaintiff worked numerous consecutive days, and overtime, due to the scheduled plant shut-down, a regular event. During shut-downs, employees are not allowed to take off – they must remain on the job. Plaintiff thus had been working 10-12 hour days, seven days a week, for some fourteen (14) days. His presence was needed on those days. His supervisor, Brian Fullingim, knew he had been there, day after day. Plaintiff completed his time cards, correctly reflecting his actual attendance.

15. Plaintiff was instructed by his supervisor to change his time card, which would have meant he would not be paid for his time actually worked. He then tried to take short-term disability, in order to protect himself from an unwarranted pay loss. Plaintiff refused to change his time card as directed by his supervisor. Plaintiff asked him what code was needed to change the time card. The supervisor could not accept Plaintiff's questions. Plaintiff did not argue with him, or raise his voice. Falsifications of time cards is contrary to company policy.

16. As a result (see ¶15 above), Plaintiff was issued a Corrective Action (Formal Contact) on August 6, 2018. Plaintiff then filed a union grievance, seeking to reverse the Formal Contact. As of filing of this Complaint, the grievance has gone to the third step, and may to go Arbitration.

17. A Formal Contact is not a proper basis for terminating an employee, under Defendant's disciplinary policies.

18. The other mechanics in Powerhouse were treated differently. They were all white and much younger than Plaintiff. By 2018, two older mechanics (Kent Kesler and Henry James) had retired. Plaintiff was thus the oldest mechanic in Powerhouse in 2018. He was the only black employee in Powerhouse in 2018.

19. Defendant did not accept Plaintiff's grievance gracefully. From the date Plaintiff filed his grievance, he became targeted by his supervisor, Brian Fullingim.

20. Plaintiff's supervisor, exhibited no knowledge of company policies, or how the plant operated. He barely spoke to Victor Boddie. He would not listen to Plaintiff, even when Plaintiff was trying to discuss a production problem. He would speak instead to the white employees and/or the younger employees. He was rude and discourteous to Plaintiff daily and dismissive, but not to the much younger, white employees.

21. Brian Fullingim (white) (50's) would keep the younger white employees advised of changes on assignments and the work schedule. But he would not tell Plaintiff, to Plaintiff's detriment and to the Company's detriment.

22. On February 4, 2019, Plaintiff was unexpectedly called to a meeting at the Human Resources Office at 2:30 p.m., at the end of his work day. He had no

5

...

idea why he was called to said meeting. On arrival, Brian Fullingim was present, along with Human Resource Manager, Sheila Diemas (white) (30's). She had not been at the Memphis plant long, not even a year. Plaintiff had had no dealings with her. They told Plaintiff he was terminated. They did not give him any reason for his termination.

23. Plaintiff then asked why he was being fired, and Fullingim did not or could not answer. Diemas likewise gave no response.

24. Plaintiff was walked out of the plant, where he had worked for 39 + years.

25. Plaintiff learned thereafter that he had been replaced by one or more of the all white, much younger mechanic-trainees. Plaintiff also learned that Chemours had concocted a new policy referred to as "Fatigue Management," designed to deal with employees such as Plaintiff, who were encouraged to work seven days a week, 10-12 hour days. Such employees were to be required to execute documents, including revising their time cards, such that they had to take two week days off during the long work period. As a result, Chemours was avoiding having to pay overtime for the weekend work, or for holidays. This "policy" is not bona fide, but was created as a defense to Boddie's claims and is designed to save significant wage expenses. It does not protect employees from fatigue.

26. About a week after he was fired, Plaintiff talked to the Plant Manager, Mario Hernandez (Hispanic) (50's), about why he was fired. Hernandez said it was because Plaintiff had not filled out his time card right, that he had been insubordinate. But this issue was still pending. No grievance decision was then

final. (It is still not resolved). Plaintiff told him that Plaintiff was being discriminated against, and that if Plaintiff had completed the time card as demanded, Plaintiff would be falsifying time records. Hernandez had no response.

27. At all relevant times Chemours was a party to a Collective Bargaining Agreement ("CBA") with the Bakery, Confectionery, Tobacco Worker and Grain Millers International and it affiliated Local Union No. 352-G [the bargaining unit], effective 30th day of August, 2005, which has been amended and supplemented by MOU's and other Agreements. Said CBA and the other Agreements have remained in full force and effect at all relevant times. Plaintiff hereby incorporates said CBA and the MOU's by reference, as if copied in words and figures.

28. Plaintiff at all relevant times has been a production and maintenance employee; and has been a "Shift Worker" and a "Day Worker" as defined in said Agreements.

29. Said CBA and the related documents expressly define non-exempt employee rights with respect to rates of pay, wages, hours of work, seniority rights, the job bidding process, and other terms and conditions of employment. The CBA and MOU's did not include any Fatigue Management clause.

30. At the Memphis plant, there have been no black managers in Powerhouse ad only one or two throughout the plant.

31. Defendant has at all relevant times had EEO policies in place, forbidding discrimination on account of race, age, and retaliation. Nevertheless, when black/older employees have complained about job assignments being made based on race or age, Defendant has done nothing. It has not properly investigated.

It has not trained its management or its employees in equal employment laws. It has not even had a Human Resources person routinely in place at the Memphis plant over the last three to five years. Defendant does not post any publications to inform employees of their EEO rights or where to turn to make a complaint. It purportedly has had a 1-800 number, which does not work.

32. Plaintiff has frequently experienced a hostile work environment on account of his race and age and retaliation, especially from Brian Fullingim. Fullingim is disdainful. He disregards black employees' seniority rights, including those of Plaintiff. He turns a deaf ear to them. He treats white and younger employees very differently. The work environment is permeated with discrimination. It occurred daily at Defendant's Memphis plant. It is severe. It is open and notorious, and is pervasive. Refusing to respect Plaintiff, to listen to Plaintiff, and to do so in front of the younger/white employees has robbed Plaintiff of his self-respect and his abilities to perform his job effectively; these actions (purposeful, intentional) have built up over a period of many months a pervasive work environment of hostility towards minorities in general, and Plaintiff in particular.

33. As a direct and proximate result of the discrimination set forth above Plaintiff has suffered the following injuries caused by said discrimination:

    ( ) embarrassment;

    ( ) humiliation;

    ( ) depression;

    ( ) sleep problems: inability to sleep, restless, lack of rest;

      ( ) dread of going to work;

      ( ) anxiety about work;

      ( ) increased blood pressure, especially when encountering mistreatment on account of race or age or in retaliation, or being disregarded;

      ( ) forgetfulness;

      ( ) anguish and emotional distress; and

      ( ) feelings that he has lost control of his life.

34. The injuries set forth have been suffered by Plaintiff and will continue to be suffered in the future.

35. Plaintiff, having been wrongfully terminated, is now suffering on-going loss of wages. He had planned to work as long as he was able, or at least to age 68. He should be compensated for his wage losses and all other benefits he would have been entitled to had he remained employed.

36. Defendant has intentionally and willfully violated Plaintiff's rights. An award of punitive damages is appropriate under the law.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

1. Judgment be entered declaring that the actions of Defendant by and through its servants, agents and employees are in violation of Title VII of the 1964 Civil Rights Act;

2. Judgment be entered declaring that the actions of Defendant by and through its servants, agents and employees are in violation of 42 U.S.C. §1981;

3. Judgment be entered declaring that the actions of Defendant by and through its servants, agents and employes are in violation of ADEA;

4. Awarding equitable relief and injunctive relief as may be appropriate under Title VII, including back pay and benefits;

5. Awarding Plaintiff a judgment for front pay, if appropriate, or reinstatement of his job, and promotions;

6. Awarding Plaintiff judgment for compensatory and punitive damages in an amount not less than $300,000.00 against the Defendant under Title VII;

7. Awarding Plaintiff judgment for compensatory damages and punitive damages against Defendant for violating 42 U.S.C. §1981, in an amount determined to be reasonable and appropriate, not less than $3,000,000.00;

8. Awarding Plaintiff a Judgment for compensatory relief available under the ADEA, and awarding him liquidated damages;

9. Awarding Plaintiff his reasonable attorney's fees and costs of the cause, including discretionary costs;

10. Granting Plaintiff such further relief as the Court deems appropriate; and

11. All other relief, legal and equitable to which Plaintiff may be entitled under the premises.

JURY TRIAL IS DEMANDED.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

<u>s/Kathleen L. Caldwell, #9916</u>
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
<u>kathleencaldwell.attorney@gmail.com</u>
*Attorney for Plaintiff*