IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| VICTOR BODDIE ] | |
| ] | |
| PLAINTIFF ] | |
| ] | |
| V. ] | CASE NO: 2:19-02423 |
| ] | |
| THE CHEMOURS COMPANY, ] | |
| A/K/A THE CHEMOURS COMPANY ] | |
| FC, LLC, a Delaware Corporation ] | |
| ] | |
| DEFENDANTS ] | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Chemours Company ("Defendant" or "Chemours"), by and through counsel, respectfully submits this Memorandum in Support of its Motion for Summary Judgment.

## INTRODUCTION

This is an action for discrimination based on race and age, and for retaliation for filing a grievance, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 (e), and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §1 2117. *Complaint,* DE # 1. Specifically, Plaintiff, a former employee at Defendant's plant in Memphis, Tennessee, asserts that Defendant discriminated against him in the terms and conditions of his employment based on his race (African American); age (60 years old); and in retaliation for filing multiple grievances over an issue with the company Fatigue Management Policy ("FMP"). *Id.* Plaintiff was terminated on February 4, 2019. *Id.*

Plaintiff's employment with Defendant was terminated for cause, as a result of his repeated failure to follow safety rules at a chemical plant and substandard performance in general. Plaintiff

cannot make a prima facie case for discrimination or retaliation and cannot establish that the legitimate reasons Chemours has provided for his termination were pretext.

Finally, Plaintiff cannot prove any elements necessary to recover punitive damages.

His claims should be dismissed as a matter of law.

## STATEMENT OF FACTS

I. **Mr. Boddie's Repeated Failure to Follow Workplace Safety Policies**

### A. The Fatigue Risk Management Policy Incidents

On or about April 30, 2018, Mr. Boddie reported to work on his 15th consecutive workday in violation of the FMP.[1] *Grievance 2018-08,* CHEMOURS/BODDIE 172, attached as Collective Ex. A. His supervisor sent him home and changed his time card to a day without pay. *Id.* Mr. Boddie filed a grievance over this issue. *Id.* This grievance went all the way to the 3rd Step. CHEMOURS/BODDIE 171, attached as Collective Ex. A.

Mr. Boddie wanted to be paid for those days but did not want to use his vacation days. *Boddie Dep.* pp. 44-47, attached as Ex. B. He refused to change his time card himself, and his supervisor changed it to an excused day without pay. *Id.* Mr. Boddie thought it should be changed to a disability day, despite the policy clearly stating that disability days counted as "work days" under the FMP. *Fatigue Management Policy* p. 15, attached as Ex. C. Management explained to Mr. Boddie that his timecard was changed from a sick day to an unpaid day because of the FMP. CHEMOURS/BODDIE 171, attached as Collective Ex. A. This Third Step Grievance Meeting was held on June 20, 2018. *Id.*

---

[1] This was a not the first time Mr. Boddie was reprimanded for failing to follow the FMP. Mr. Boddie had previously been given an informal contact for violating the same policy on October 15, 2015. CHEMOURS/BODDIE 167.

On July 2, 2018, Mr. Boddie again attempted to change his time to "disability" while on a required rest day under the FMP. CHEMOURS/BODDIE 182, attached as Collective Ex. A.

On July 23, 2018, Mr. Boddie committed the exact same violation of the FMP and reported to work on his 15th consecutive workday. *Grievance 2018-11,* CHEMOURS/BODDIE 170, attached as Collective Ex. A. He was given an informal contact for once again refusing to follow the FMP, which is an important safety rule for the workplace. *Id.*

Mr. Boddie again filed a grievance over this issue. *Id.* Mr. Boddie was aware that he was on his 15th day of work and was aware of the FMP as he had just been coached about it during the recent grievance. CHEMOURS/BODDIE 168, attached as Collective Ex. A. Mr. Boddie again refused to record his time correctly as either a vacation day or a day without pay, forcing his supervisor to again fix his time card to reflect that he was not working that day and therefore not violating the FMP. CHEMOURS/BODDIE 169, attached as Collective Ex. A.

On or about July 31, 2018, Mr. Boddie filed another grievance against his supervisor for changing his time card to a day without pay. *Grievance 2018-13,* CHEMOURS/BODDIE 169, attached as Collective Ex. A. On or about August 2, 2018, Mr. Boddie was given a formal contact for failing to follow the FMP and failing to accurately update and track his time while at work. CHEMOURS/BODDIE 185, 164, 182-183, attached as Collective Ex. A.

On August 16, 2018, Mr. Boddie filed another grievance alleging "continued reprisal, retaliation, and harassment surrounding but not limited to Fatigue Management." *Grievance 2018-15,* CHEMOURS/BODDIE 166, attached as Collective Ex. A. All three of the grievances related to Mr. Boddie's violation of the FMP on July 23, 2018 and his failure to accurately record his time on that day were addressed in the third step grievance meeting held on September 5, 2018. CHEMOURS/BODDIE 164, attached as Collective Ex. A. At this meeting, Management refused

to remove the Informal Contact or Formal Contact from his record but did give him two days off with pay. *Id.*

Mr. Boddie was placed on probation for a year from the date that he received the Formal Contact, or until August 5, 2019. CHEMOURS/BODDIE 182-183, attached as Collective Ex. A. While on probation, "employee must demonstrate immediate and sustained satisfactory performance in all aspects of his role" and failure to comply with the job expectations "will result in further disciplinary action, up to and including discharge". *Id.* "Repeated failure to follow directions… would be considered a major misconduct" and discipline steps could be skipped if necessary. *Fullingim Dep.* p. 42, attached as Ex. D.

### B. The February 1, 2019 Incident

In his deposition, Mr. Boddie alleged that while at work on Friday, February 1, 2019, he got some unknown liquid and residue from a gasket on his clothing while removing a gasket and needed to take a shower during his scheduled workday. *Boddie Dep.* pp. 109-110, attached as Ex. B. After they finished the job, Mr. Boddie told his co-worker Mr. Whiteside that he couldn't keep his uniform on because it was wet and it was cold. *Id.* p. 110. Mr. Boddie went into the change house, where all his clothes and uniforms were, to take a shower. *Id.* While he was in the shower, Mr. Fullingim came looking for him to discuss an overtime opportunity and told him he was not supposed to be taking a shower or leaving his work area during his scheduled work time. *Id.* pp. 110-112.

If Mr. Boddie opened the vessel and was sprayed with unknown liquid and some residue while changing the gasket, "a major safety process would have failed" and he should have notified management immediately. *Fullingim Dep.* p. 40, attached as Ex. D; *Hernandez Dep.* p. 52, attached as Ex. E. "Any incident or injury, exposure is supposed to be immediately reported to

4

supervision." *Hernandez Dep.* p. 52, attached as Ex. E.  Failure to do so can result in immediate termination. *Id* p. 53.

The change room where Mr. Boddie was found by Mr. Fullingim was at least 200 or 300 feet away from the process area where he would have been exposed to some fluid. *Id.* p. 55.  If he went to the change room showers with a chemical on him, he could have spread contamination throughout the plant and exposed others to harm while in route. *Id.*

Company procedure for exposure to any kind of chemical requires the exposed employee use the safety showers that were significantly closer than the change house to get decontaminated. *Id.* "If you get something on you, you're supposed to get under a safety shower and decon." *Fullingim Dep.* p. 33; *Diemer Dep.* pp. 19-20, attached as Ex. F.  Even Mr. Boddie himself admits that "[i]f you get any kind of chemical on you, they've got safety showers out there, and you've got to get under them." *Boddie Dep.* at 110.

All maintenance employees are given the last 10 minutes of their shift to take a shower if needed and change out of their work clothes. *Diemer Dep.* p. 20.  Further, Mr. Boddie failed to check with his supervisor before leaving his work area early.  *Boddie Dep.* pp. 110-111. All employees are supposed to check in with their supervisor before they leave… their work area, so we know where everyone's at." *Diemer Dep.*  p. 21.

Mr. Boddie was in the change room and shower 20-25 minutes earlier than permitted, and other employees indicated that Mr. Boddie routinely leaves his work area early for that purpose. *Fullingim Dep.* pp. 33-34.

At no time on February 1, 2019 or during the weeks following his termination while his grievance was being investigated, did Mr. Boddie tell his supervisor Mr. Fullingim, Ms. Diemer, Mr. Hernandez, or anyone in the union that he was in the shower because he had been splashed with an unknown liquid. *Hernandez Dep.* p. 22; *Fullingim Dep.* pp. 33-34; *Diemer Dep.* p. 20.

### C. Mr. Boddie's Termination

The HR Manager Shelia Diemer provided Plant Manager Mario Hernandez with Mr. Boddie's discipline history, performance history, and background information on the latest issue that ultimately led to the termination of his employment. *Diemer Dep.* p. 14. Mr. Boddie's employment was terminated because he left his assigned work area earlier than permitted, which was a failure to follow company protocols, while he was already on probation. *Hernandez Dep.* p. 10, *Diemer Dep.* pp. 17-18; *Fullingim Dep.* p. 17. As a long time employee, he knew that if he needed to leave his work area earlier, he needed to notify supervision, and he did not. *Hernandez Dep.* p. 49.

In deciding whether to uphold this termination decision in the grievance process, Mr. Hernandez considered highly the recommendations of Ms. Diemer and Mr. Fullingim, and also interviewed other employees at the plant at the request of the Union and Mr. Boddie. *Hernandez Dep.* p. 20; CHEMOURS/BODDIE 175, attached as Collective Ex. G. During the 3rd step termination meeting, Mr. Boddie asked Mr. Hernandez to talk to the people he worked with to confirm that he was a good performer, and Mr. Hernandez did so. *Diemer Dep.* p. 53. Mr. Hernandez talked to 12 employees, including supervisors and managers, and "did not receive any positive feedback." *Id.* p. 54; CHEMOURS/BODDIE 175, attached as Collective Ex. G.

"All the indications gathered during the third step investigation… didn't show Mr. Victor having the willingness nor the cooperation to work with management to change his performance and stay employed with the Memphis site." *Hernandez Dep.* p. 26. Chemours not only wants its employees to be good mechanics but also follow company values on safety and ethics. *Id.* pp. 27-28.

No one replaced Mr. Boddie after his employment was terminated. *Diemer Dep.* p. 60.

II.     **Chemours' Policy and Procedure Manual**

According to the Plant's Policy & Procedure Manual, to remain employed at the Memphis Plaint, all employees must: be at work for regular and assigned work shifts and maintain acceptable attendance performance; know and observe area and plant safety rules; perform assigned work at an acceptable standard; and refrain from committing a major misconduct offense. *Manual Subsection 1.1.A,* attached as Collective Ex. H.

Shift workers may leave their work area up to ten (10) minutes before the end of their shift, provided an employee on the incoming shift has relieved them. *Manual Subsection 1.1.B,* attached as Collective Ex. H. Shift workers must stay on the plant until relieved or instructed by supervision to leave. *Id.* Maintenance mechanics like Mr. Boddie are granted ten (10) minutes of "shower" time at the completion of their regular shift because they engage daily in tasks that expose them to regular contact with dirt, oil, great, etc., to a greater degree than other people on the site. *Id.* Mechanics are allowed to leave their assigned work station ten (10) minutes prior to the completion of their assigned shift. *Id.*

Employees should normally not be required to work more than sixteen (16) continuous hours, or hours in excess of the limits defined by the Fatigue Management Program. *Id.*

"An employee who continues to be unwilling or unable to perform in accordance with plant standards will be discharged from employment." *Manual Section 2.2,* attached as Collective Ex. H. "Should a major misconduct or other serious offense be committed, the early steps may be bypassed." *Id.* "A Formal Reprimand is a severe rebuke that places the employee on probation for one year. A Formal Reprimand is administered when: Performance does not improve following a Formal Contact; Deficient performance is recognized following two or more unrelated Formal Contacts; There is a major misconduct or other serious offense not warranting immediate discharge." *Manual Subsection 2.3.A,* attached as Collective Ex. H.

Discharge is warranted when an employee "is unwilling or unable to perform in accordance with plant standards" and when "performance does not improve following a Formal Reprimand or there is a major misconduct offense." *Manual Subsection 2.3.D,* attached as Collective Ex. H. "A major misconduct offense is a flagrant violation of established plant rules, approved practices or accepted conduct that is contrary to the ability to maintain a safe, respectful, orderly, and productive workplace. Such actions make the employee subject to severe corrective action up to and including discharge." *Manual Subsection 2.4,* attached as Collective Ex. H.

"An employee believed to have committed a major misconduct offense will immediately be removed from the job, and not allowed to return until an investigation is completed to determine all the facts surrounding the incident, and a decision on a course of action based on those facts is made." *Id.* The Manual lists out examples of major misconduct offenses including violations of the Vessel Entry Procedure and Line Break Procedure; failure to promptly report an on-site injury or a safety incident; and insubordination or deliberate refusal to comply with reasonable requests or instructions. *Manual Subsection 2.4A,* attached as Collective Ex. H.

**III.    The Fatigue Management Policy**

The purpose of the Fatigue Management Policy is to "provide guidance and define site systems to all personnel for understanding, recognizing, and managing process safety risks associated with employee mental and/or physical fatigue which may be generated by working an extended schedule or by other site factors such as the work environment and job tasks." *Fatigue Risk Management Policy* p. 1, attached as Ex. C. Workplace fatigue for employees engaged in hazardous processes "is a risk to safe operations" and thus service limitations are necessary. *Id.* p. 4.

Under the FMP, employees are not permitted to work for more than fourteen (14) consecutive shifts/periods unless a formal exception has been authorized. *Id.* p. 5. A disability day

8

counts as a day worked under the FMP because it is assumed the employee would be off site with an illness and therefore probably not getting good rest. *Id.* p. 15.

## LAW AND ARGUMENT

I.  **STANDARD OF REVIEW**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When a motion for summary judgment is made, the burden is on the non-moving party to set forth admissible evidence of specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S., 242, 250 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *Id.* at 248.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Id.* at 247-48, 106; *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

II. **PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RACE OR AGE DISCRIMINATION.**

Plaintiff alleges that Chemours discriminated against him because of his race and age. Plaintiff may establish the alleged discrimination claims by presenting either direct or circumstantial evidence. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002).

Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

The Sixth Circuit has recognized that the direct evidence and circumstantial evidence paths are "mutually exclusive" and that a plaintiff "need only prove one or the other, not both." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). Direct evidence refers to "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" and "does not require the fact finder to draw any inferences to reach that conclusion. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. Mar. 10, 2006) (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005)). "Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed." *Id*.

In the present case, there is no direct evidence of race or age discrimination or race or age based animus. In the absence of direct evidence, Plaintiff's alleged circumstantial evidence of discrimination claims under Title VII and §1981 should be analyzed under the *McDonald Douglas*[2] burden shifting analysis. *See, e.g. Berquist v. Washington Mut. Bank,* 500 F3d 344, 346 (5th Circuit, 2007).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Amini*, 440 F3d at 359. If Defendant does so, the burden returns to Plaintiff to show that Defendant's stated reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc*., 560 F.3d 553, 557-58 (6th Cir. 2009). Throughout this burden-shifting approach, Plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, intentional racial discrimination. *Id.*

### A.  Plaintiff Cannot Establish a Prima Facie Case of Age Discrimination.

To prove a claim for discrimination under the ADEA, Mr. Boddie must prove by a preponderance of the evidence that age was a determining factor in any adverse action he alleges.

---

[2]  *McDonald Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Adverse actions are unlawful only when actually motivated by intentional age discrimination; the law does not constrain actions motivated by factors unrelated to age. The key question in summary judgment ADEA cases is whether a plaintiff has proof sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against him because of his age. *Damron v. Yellow Freight Sys.,* 18 F. Supp. 2d 812, 831 (E.D. Tenn. 1998), *aff'd,* 188 F.3d 506 (6th Cir. 1999).

As with his race discrimination allegations, Mr. Boddie has not presented any direct evidence of discrimination, and the Court must apply the burden-shifting framework adopted in *McDonnell-Douglas* to evaluate Mr. Boddie's alleged indirect evidence.

Thus, Mr. Boddie must show (1) he was at least 40 years old; (2) he suffered an adverse employment action; (3) he was qualified for the position held; and (4) he was replaced by or treated less favorably than a similarly situated but significantly younger person. *Anderson v. Asplundh Tree Expert Co., Inc.,* 2007 WL 2746890 (M.D. Tenn. 2007); *Brennan v. Tractor Supply Co.,* 2007 WL 1296032 (6th Cir. 2007).

A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Barnes v. GenCorp.,* 896 F.2d 1457, 1465 (6th Cir. 1990); *accord Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir. 1992); *Anderson v. Asplundh Tree Expert Co., Inc., supra,* at *19.

Mr. Boddie was not replaced at all, so he cannot prove that he was replaced by a similarly situated but significantly younger person. He likewise has no evidence that he was treated less favorably than similarly situated but significantly younger person.

Plaintiff cannot meet his burden of proof that Chemours discriminated against him based on his age and his claim must be dismissed.

### B. Plaintiff Cannot Establish a Prima Facie Case of Race Discrimination.

To establish a prima facie case of racial discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated non-protected employees. *Evans v. Walgreen Co.*, 813 F.Supp.2d 897, 918 (W.D. Tenn. 2011).

Similarly, Plaintiff cannot establish the fourth essential element of his prima facie case of racial discrimination. Plaintiff was not treated differently than similarly situated non-protected employees and his claim should be dismissed.

### C. Plaintiff Cannot Establish a Prima Facie Case of Retaliation.

Plaintiff's grievances to the union regarding what he believed to be an unfair Fatigue Management Policy does not qualify as "protected activity" under the law. "Protected activity" includes only an employee's activity in opposing a practice that one of these laws makes unlawful, or "making a charge, testifying, assisting, or participating in any manner in" an investigation or proceeding under that law. *Scott v. Potter,* 182 Fed.Appx. 521, 524 (grievances over workplace safety, overtime hours, and romantic relationship not protected activity); *Fox v. Eagle Distrib. Co.,* 510 F.3d 587 (6th Cir. Dec. 14, 2007)(under ADEA, activity must be specific to age, so complaints about paycheck shortages and other non-age activities do not qualify).

Furthermore, Mr. Boddie's admitted violation of safety rules dispels any inference of retaliation. "[A]n intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity." *James v. Tavern*, 2019 WL 8013938, at *7 (M.D. Tenn. Dec. 9, 2019) (internal quotation omitted). Any retaliatory motivation tied to Plaintiff's discrimination complaint, which Chemours denies, is voided by his admitted violation of Company policy. *See McDonald v. UAW-GM Ctr. for Human Res.*, 738 Fed. Appx. 848, 855-

56 (6th Cir. 2018) (plaintiff's retaliation claim failed because plaintiff's insubordination and later admission to the insubordination were the 'but for' cause of the adverse employment action).

This Court "has repeatedly held that violations of company policies . . . are legitimate, non-discriminatory reasons for . . . discharging an employee." *Williams v. Graphic Packaging Int'l, Inc.*, 2018 WL 2118311 at *12 n.2 (M.D. Tenn. May 8, 2018); *see also Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (violation of safety rules contained in employee manual held to be legitimate reason for termination); *Chrzan v. ADT Sec. Servs., Inc.*, 2011 WL 2601438, at *4 (M.D. Tenn. June 30, 2011) (termination for violation of written EEO Policy, for which plaintiff acknowledged receipt, was legitimate and nondiscriminatory).

Plaintiff has failed to establish that he was treated differently than similarly situated non-protected employees, an essential element of his prima facie Title VII and §1981 race discrimination claims, and Chemours is therefore entitled to summary judgment as a matter of law.

## II. PLAINTIFF CANNOT SHOW ANY EVIDENCE OF PRETEXT.

Even if Plaintiff could establish a prima facie case of race or age discrimination, he cannot meet his burden of providing evidence that the legitimate, non-discriminatory reason stated by Chemours for why Plaintiff was terminated was pretext for employment discrimination. *See, e.g., Johnson v. Univ. of Cincinnati,* 215 F.2d 561, 572-73 (6th Cir. 2000).

If a prima facie case is established, the defendant has the obligation to produce a legitimate, non-discriminatory reason for its employment decisions. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-7 (1993). Once stated, the plaintiff then must prove that the reasons for any alleged adverse employment action offered by the employer are pretext for intentional discrimination. *Hicks,* 509 U.S. at 509. An employer satisfies its production requirement at this stage of the summary judgment action when it sets forth reasons for its action which, "if believed by the trier

of fact would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks,* 509 U.S. at 506-7.

Plaintiff may establish pretext by showing: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) the proffered reasons were insufficient to motivate the employer's action.  See *id*. (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

The first showing "consists of evidence that the proffered bases for the plaintiff's adverse employment action never happened." *Manzer*, 29 F.3d at 1084.  Under the second showing, a plaintiff "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Id*.  "A reason cannot be pretext for retaliation [or discrimination] unless it is shown both that the reason was false and that retaliation was the real reason." *Travers v. Cellco P'ship*, 2013 WL 6048177, at *3 (M.D. Tenn. Nov. 14, 2013); *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012).

To evaluate whether a plaintiff has created a genuine issue of material fact that a defendant's proffered reason is pretext, courts should examine "the evidence the plaintiff produces to establish a prima facie case, evidence discrediting the defendant's proffered reason, as well as any additional evidence that the plaintiff chooses to put forth." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 531 (6th Cir. 2007).  The Court notes that evidence produced to support the prima facie case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext.  *Blair*, 505 F.3d at 533.

Chemours has articulated a legitimate, non-discriminatory business reason for its decision to terminate Plaintiff's employment.  As discussed above, Plaintiff's repeated failure to follow safety rules in a chemical plant endangers other employees and the community and cannot be

14

tolerated. If Plaintiff's allegation that he was splashed with a chemical is taken as true, as it must be at this stage, his failure to report this incident or to follow well established decontamination procedures is a serious violation of Chemours' safety policy, and Chemours had immediate grounds to terminate his employment. Even if he was not splashed with an unknown liquid, Mr. Boddie repeatedly refused to comply with the Fatigue Management Policy, which is a safety policy intended to prevent mistakes at a chemical plant, and repeatedly refused to follow simple policies and instructions from his supervisor. He was already on probation and left his work area early without being relieved by another employee or informing anyone, potentially leaving the area understaffed and creating the potential for safety problems. He also was not where he was supposed to be while his supervisor was looking for him to assign overtime shifts, making it difficult for management to adequately and safely staff the next shift. Mr. Boddie has worked at the plant for 39 years and had been engaged in the grievance process for four different grievances during just the year leading up to his termination. He was well-versed in Defendants' policies, and his repeated refusal to follow them, particularly while already on probation, was a legitimate, non-discriminatory business reason to terminate his employment.

The Plaintiff has failed to come forward with any evidence to show that Chemours' decision to terminate him was a pretext to mask intentional discrimination. Chemours is entitled to a judgment dismissing Plaintiff's claims of discrimination and retaliation.

### III.     CHEMOURS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM.

In Title VII cases, punitive damages are limited "to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529 (1999) (citing 42 U.S.C. § 1981A(b)(1)). In determining whether punitive damages are

appropriate, courts look not to the allegedly discriminatory behavior of low-level employees, but only to persons who are "managerial agents." *Id.*; *see EEOC v. New Breed Logistics*, 962 F. Supp. 2d 1001, 1020 (W.D. Tenn. 2013), *aff'd*, 783 F.3d 1057 (6th Cir. 2015) ("A jury may impute malice or reckless indifference to an employer when the harasser is an individual acting in a managerial capacity within the scope of employment."). To be considered a "managerial agent," the employee "must have unilateral authority to hire, fire, demote, transfer, discipline, or alter compensation" and be of "sufficient statute and authority to have some control and discretion and independent judgment over a certain area of the business with some power . . . to set policy for the company." *Id.*

Here, Plaintiff has produced no evidence that Chemours engaged in intentional discrimination with malice or reckless indifference to Plaintiff's rights. Furthermore, Plaintiff has failed to demonstrate that Chemours discriminated against him at all, much less with the requisite malice or reckless indifference that would be required to recover punitive damages. Plaintiff is not entitled to punitive damages and his claim should be dismissed as a matter of law.

## CONCLUSION

Plaintiff cannot prove that Chemours discriminated or retaliated against him due to his race or age. Chemours' concern for the safety of its employees and the community is a legitimate business reason for its decision to terminate Mr. Boddie's employment, and he has no evidence that the stated reason for the decision was pretext for racial or age-based animus.

Finally, even if Plaintiff could prove discrimination, which he cannot, Plaintiff cannot prove any elements necessary to recover punitive damages.

Defendant respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety with prejudice.

        Respectfully Submitted,

*/s/  James C. Bradshaw III*
James C. Bradshaw III,  BPR No. 013170
Meredith L. Eason,  BPR No. 030183
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
615.244.0020  /  Fax:  615.256.1726
jbradshaw@wyattfirm.com
meason@wyattfirm.com

*Counsel for Defendant Chemours Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed and served upon the following via the Court's electronic filing system (ECF) on this the 15th day of March, 2022.

Ralph T. Gibson
Gibson Perryman Law Firm
22 N. Front Street, Suite 650
Memphis, Tennessee 38103
    *Counsel for Plaintiff, Victor Boddie*

*/s/  James C. Bradshaw III*

100719000.1